IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. GLENN,<br><br>  Plaintiff,<br><br> v.<br><br>DONALD RUMSFELD, et al.<br><br>  Defendants.<br>_____ / | No. C 05-01787 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

  This matter comes before the Court upon consideration of the motion to dismiss filed by Defendants Donald Rumsfeld ("Rumsfeld"), T.S. Jones ("Jones"), Marine Corps Training and Education Command ("TECOM"), Colonel A. Salinas ("Salinas"), and Colonel Michael Dyer ("Dyer") (collectively "Defendants"). Having considered the parties' pleadings, relevant legal authority, and the parties' arguments at the hearing on this matter, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendants' motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

  The facts underlying this action, as set forth in the Complaint, are as follows: Plaintiff Major John E. Glenn ("Glenn"), a former Junior Reserve Officers' Training Corps ("JROTC") certified instructor for the United States Marine Corps ("USMC"), taught at Kubasaki High School, a Department of Defense Dependents School in Okinawa, Japan, for a period of ten years. (Compl., ¶¶ 5, 7, 14.)

JROTC instructors must meet Military Service requirements and maintain standards acceptable to the branch of the military for which they are an instructor in order to retain a teaching certification for JROTC. (*Id*., ¶ 9.C.) The USMC may revoke certification if it is "in the best interest of the Marine Corps" to do so. (*Id*., ¶ 9.D; Defs. Ex. 3, Marine Corps JROTC Standard Operating Procedures ("MCJROTC SOP"), § 3002.1.)[1]

The USMC must follow certain procedures before decertifying an instructor. According to MCJROTC SOP, instructors who face possible decertification "will be notified of the pending action, given the opportunity to review information presented against them, and permitted to prepare a statement for consideration by the [CG, MCDDC] prior to the decision." (Defs. Ex. 3, MCJROTC SOP, § 3002.5.) A certification/decertification board is the first entity to process a revocation of certification. (Compl., ¶ 9.E; Defs. Ex. 4.) After an independent review and recommendations are completed, the matter is forwarded to the Commanding General of TECOM for final decision. (*Id.*)

In December 2002, Glenn was notified that he was being investigated for allegations of child abuse. (Compl., ¶ 15.) The allegations were investigated by both the Commanding General of the USMC at Camp Butler, Okinawa and by officials of the Family Advocacy Program ("FAP"), a program under the jurisdiction of Camp Butler's Commanding General. (*Id.*) Glenn has denied these allegations, and according to the Complaint, the FAP found no basis for the allegations. (*Id.*)

On June 12, 2003, based upon the allegations discussed above, Defendant Salinas notified Glenn that she intended to request rescission of his certification. (Compl., ¶ 16; Defs. Ex. 5.3.) On July 18, 2003, Salinas recommended the revocation of Glenn's JROTC certification. (Compl., ¶ 16; Defs. Ex. 5.)

Glenn contends that Salinas refused a June 16, 2003 request for all the evidentiary records she reviewed in making the decision to recommend decertification and also refused

---

[1] Many of Defendants' Exhibits are referenced in the Complaint and, as Glenn has not contested their authenticity, the Court may consider them in connection with the motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).

2

requests for a copy of all the evidence surrounding the proposed action that she would forward to Defendant Jones. (*Id.*, ¶ 22.A.) Glenn further contends that other requests for information, documents and materials surrounding the decision to decertify him were denied in whole or in part. (*See id.*, ¶¶ 22.B-22.Q.)

On August 18, 2003, Jones rescinded Glenn's JROTC certification, concluding that Glenn's "poor judgment and lack of professionalism have discredited the MCJROTC Program and the United States Marine Corps. Hence, I have lost confidence in your ability to perform as a Senior Marine Instructor. Therefore, your continued service as a Senior Marine Instructor with the MCJROTC Program is not in the best interest of the United States Marine Corps." (*Id.*, ¶ 19; Defs. Ex. 6.) Glenn contends that this decision "contravened internal regulations mandating an independent review by a Certification Board prior to final decision." (Compl., ¶ 20; *see also id.*, ¶¶ 24-26 (challenging procedures relating to decertification decision).)

On April 29, 2005, Glenn filed the instant complaint alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et. seq.*, violations of the Privacy Act, 5 U.S.C. § 552a, and violations of the Due Process Clause of the Fifth Amendment to the United States Constitution.

**ANALYSIS**

Defendants move to dismiss Glenn's claims on the following grounds: (1) the Court lacks subject matter jurisdiction over the APA claim because there is no meaningful standard by which to evaluate the decertification decision; (2) the decision to decertify Glenn is not subject to review by this Court and, thus, the APA claim should be dismissed on this ground as well; (3) the Privacy Act claim must be dismissed for failing to exhaust administrative remedies; and (4) the Due Process claim must be dismissed because Glenn does not have a property interest in his certification.[2]

---

[2] Defendants alternatively move for summary judgment. Because the instant motion is the Defendants' responsive pleading, the Court declines to treat it as a motion for summary judgment.

3

**A.    Legal Standards Applicable to a Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, a district court may consider documents attached to a plaintiff's complaint without converting a motion to dismiss into a motion for summary judgment. *Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Similarly, a court may consider documents referenced in but not attached to a complaint, where no party questions their authenticity, without converting a motion to dismiss into a motion for summary judgment. *Branch*, 14 F.3d at 453-454.

Unlike a Rule 12(b)(6) motion, in moving to dismiss under Rule 12(b)(1) a party can "attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**B.    Legal Standards Applicable to Judicial Review of Military Personnel Decisions.**

"Courts have declined to review a variety of employment actions involving military personnel because, in the military, 'overriding demands of discipline and duty' prevail, demands

4

which do not have a counterpart in civilian life." *Mier v. Owens*, 57 F.3d 747, 749 (9th Cir. 1995) (quoting *Chappell v. Wallace*, 462 U.S. 296, 300 (1983)). Courts regularly decline to hear suits concerning "personnel actions integrally related to the military's unique structure." *Id*. Thus, challenges to termination and discharge decisions are "nonjusticiable because judicial review 'would seriously impede the military in performance of its vital duties.'" *Id*. at 750 (quoting *Christoffersen v. Wash. State Air Nat'l Guard,* 855 F.2d 1437, 1444 (9th Cir. 1988)). In addition, the *Feres* intramilitary immunity doctrine[3], which precludes judicial review of tort and constitutional claims against the military and its members, "is applicable 'whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States.'" *Bowen v. Oistead*, 125 F.3d 800, 804 (9th Cir. 1997) (quoting *Hodge v. Dalton*, 107 F.3d 705, 710 ((9th Cir. 1997) (internal quotations omitted)). The fact that a plaintiff is a civilian or not on active duty does not affect the analysis. *See id*. (citing *Quintana v. United States*, 997 F.2d 711, 712 (10th Cir. 1993)); *see also Persons v. United States*, 925 F.2d 292, 295 (9th Cir. 1991).

In general, in other contexts, "[a]n internal military decision is unreviewable unless the plaintiff alleges (a) a violation of [a recognized constitutional right], a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies." *Khalsa v. Weinberger*, 779 F.2d 1393, 1398 (9th Cir. 1985). If a plaintiff alleges both of these things, a court weighs four factors to determine whether judicial review is appropriate: (1) the nature and strength of the plaintiff's claim; (2) the potential injury to the plaintiff if review is refused; (3) the extent of interference with military functions; and (4) the extent to which military discretion or expertise is involved. *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002) (citing *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971)).

---

[3]    The Supreme Court articulated this doctrine in *Feres v. United States*, 340 U.S. 135 (1950).

5

**C.   Glenn's APA Claim.**

**1.   Glenn's Substantive Challenge to the Decision Is Not Reviewable.**

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute is entitled to judicial review thereof." 5 U.S.C. § 702. To maintain such a claim, the challenged decision must be a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Although, in general, there is "a strong presumption that Congress intends judicial review of administrative action," there are certain statutory exceptions. *See, e.g., Socop-Gonzales v. INS*, 208 F.3d 838, 843 (9th Cir. 2000) (internal quotations and citations omitted). By its terms the APA precludes judicial review when: (1) judicial review is precluded by another statute, *see* 5 U.S.C. § 701(a)(1); or (2) the decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

The Supreme Court has explained that the distinction between these two exceptions is that Section 701(a)(1) "is concerned with whether Congress expressed an intent to prohibit judicial review; subsection (a)(2) applies 'in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (citing S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945))). Thus, Section 701(a)(2) will preclude judicial review "even when Congress has not affirmatively precluded judicial oversight, ' ... if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Webster*, 486 U.S. at 600-601 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). In determining whether or not there is a meaningful standard by which to judge an agency's actions, the Court is not limited to the language of the statute at issue. *See Socop-Gonzales*, 208 F.3d at 844-45 (noting that an agency's regulation or internal policies may provide a court with law to apply).

JROTC programs are governed by 10 U.S.C. § 2031, which provides, *inter alia*, that the Secretary of the military department concerned, here the USMC, "may authorize qualified institutions to employ, as administrators and instructors, in the program, retired officers ...

6

whose qualifications are approved by the Secretary and the institution concerned ... ." 10 U.S.C. § 2031(d). Although the statute is silent on standards to be applied with respect to certification and decertification decisions, MCJROTC SOP state that "instructor certification may be withdrawn at the discretion of the CG MCCDC (C 46), if revocation of the certification is in the best interest of the Marine Corps." MCJROTC SOP, § 3002.1. That is the basis for Glenn's termination in this case. (Defs. Exs. 3, 6.)

Defendants argue that SOP § 3002.1 is analogous to a provision of the National Security Act ("NSA"), authorizing the termination of an employee when the Director of the CIA "shall deem such termination necessary or advisable in the interests of the United States." *See Webster,* 486 U.S. at 594 (quoting 50 U.S.C. § 403(c)). In *Webster*, the Supreme Court concluded that this language, and the structure of the NSA as a whole, "foreclose[d] the application of any meaningful standard of judicial review" and that "Congress meant to commit individual employee discharges to the Director's discretion." *Id.* at 600-01.

The Court can find no meaningful distinction between MCJROTC SOP § 3002.1 and the language of the NSA at issue in *Webster*. Indeed, the authorities Defendants cited at oral argument confirm this conclusion. *See Dorfmont v. Brown*, 913 F.2d 1399, 1400-01 (9th Cir. 1990) (holding that a federal court could not review a Defense Department agency's finding that the plaintiff's continued access to classified material was not "clearly consistent with the national interest"); *see also Topgallant Group, Inc. v. United States*, 704 F. Supp. 265, 266 (D.D.C. 1988) (finding that the Military Sealift Command's decision to lift the suspension of a contract was "in the best interest of the United States" and thus not subject to judicial review).

As was the case in *Webster*, it is this Court's view that "[s]hort of permitting cross-examination of" Defendant Jones "concerning his views of the" USMC's best interests and whether Glenn's continued certification was inimical to those interests, there would be no basis on which the Court could properly assess a decertification decision on this ground. *See Webster*, 486 U.S. at 600. Nor do the remaining provisions of the MCJROTC SOP provide this Court with any guidance as to what would or would not be "in the best interest of the Marine Corps." Accordingly, to the extent that Glenn challenges the Defendants' decision to decertify

him on the grounds that it was in the best interests of the USMC, that decision is not reviewable by this Court. Defendants' motion to dismiss is granted, and this aspect of his APA claim is dismissed with prejudice.

### 2. Glenn's Procedural Challenge Is Not Barred.

Glenn also contends that in rendering the decertification decision, Defendants failed to follow their own internal procedures. (Compl., ¶ 20.) At oral argument, Defendants relied on *Dorfmont* in arguing that judicial review of their compliance with USMC directives or SOP would "perforce involve a review on the merits of the decision" to revoke Glenn's certification. 913 F.2d at 1402 n.4. Alternatively, Defendants contend that all internal procedures were followed and, to support this contention, submit a declaration from a member of the certification board. (*See* Defs. Ex. 12.)

"Agency violations of their own regulations, whether or not also in violation of the Constitution, may well be inconsistent with the standards of agency action which the APA directs the courts to enforce." *United States v. Caceres*, 440 U.S. 741, 754 (1979); *accord Webster*, 486 U.S. at 602 n.7 (citing *Service v. Dulles*, 354 U.S. (1957) (recognizing federal courts' right to review an agency's actions to ensure that the agency has followed its own regulations)). For example, in *Doe v. Schachter*, the court distinguished *Dorfmont* and found that it could review the agency's revocation of the plaintiff's security clearance. 804 F. Supp. 53, 62-63 (N.D. Cal. 1992). Specifically, the court found that judicial review of whether the agency followed its own internal regulations did not require "the court to decide whether the findings at [the plaintiff's] hearing were contrary to the agency's rule that security clearances should be revoked if doing so is consistent with the national interest." *Id.* at 62. In following *Dulles*, the *Doe* court also noted that judicial review of such a claim challenging an agency's failure to follow its own regulations "makes eminent sense" because even when the law commits an agency's action to that agency's discretion, "the agency doesn't enjoy the discretion to defy its own regulations." *Id.* at 63.

Defendants also contend that this Court may not review whether they followed the proper procedures in deciding to decertify Glenn because this decision was a military decision.

Defendants' reliance on *Khalsa* and *Mindes* to support this contention is misplaced. *Khalsa*, for example, applied the *Mindes* test to the *substance* of a military decision, not to the procedures followed in reaching that decision. *See Khalsa*, 779 F.2d at 1396 n.1 ("Allowing the litigation to proceed forward could interfere with military discipline and efficient operations by requiring superior officers to submit . . . their **reasons** for sensitive decisions concerning enlisted personnel or the adoption of uniform standards and regulations") (emphasis added). The policy behind the *Mindes* test to determine whether a military decision is reviewable is that "the court is not free to substitute its judgment in matters of military expertise" and must respect the "degree of deference due to factual assertions by the military." *Id*. at 1400 n.4. Here, to the limited extent that Glenn asks this Court to declare that Defendants have failed to follow their own proper procedures (*see* Compl., at 13-14), such relief would not require this Court to substitute its judgment as to the substance of the decertification decision for that of the Defendants. For these reasons, the Court here finds that it may review Glenn's claim that the USMC failed to follow its own regulations or procedures without deciding whether the decertification decision was in the best interest of the USMC. Although Defendants have introduced evidence that they claim shows internal procedures were followed, discovery has not yet commenced, and the Court concludes that resolution of this issue is premature. As such, the Court declines Defendants' invitation to summarily adjudicate this issue.

Therefore, Defendants' motion as to this aspect of Glenn's APA claim is denied, and Glenn may proceed on his APA claim only to the extent it challenges Defendants' failure to follow their own procedures with respect to the decision to decertify him.

**D.     Glenn's Privacy Act Claim.**

The Privacy Act provides, in pertinent part, that "[e]ach agency that maintains a system of records shall - (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . ." 5 U.S.C. § 552a(d)(1). Section 552a(g)(1)(B) permits the filing of a civil action if an agency refuses to provide access to a request under subsection (d)(1), provided that a party exhaust

9

administrative remedies before filing suit pursuant to this provision. *See, e.g., Hewitt v. Grabicki*, 794 F.2d 1373, 1377 (9th Cir. 1986); 32 C.F.R. § 701.111 (setting forth appeal procedure). The Ninth Circuit also has held, nevertheless, that "[e]xhaustion of administrative remedies is not a precondition to bringing an action for *damages* under the Privacy Act." *Hewitt*, 794 F.2d at 1379 (emphasis added). Here, the Complaint prays for both injunctive and monetary relief.

Glenn contends that the Defendants have violated the Privacy Act by failing to produce documents requested pursuant to subsection (d)(1). (Compl., ¶ 22.A-Q.) Defendants contend that Glenn did not appeal decisions relating to his Privacy Act requests and, thus, has failed to exhaust administrative remedies.

**1. Glenn's Privacy Act Claim for Injunctive Relief.**

To the extent that Glenn asks this Court to order the Defendants to modify all records regarding his decertification by allowing him to attach a rebuttal to such records, Glenn has not exhausted his administrative remedies.

In particular, at oral argument, Glenn clarified that he had made three Privacy Act requests. On June 30, 2003, Glenn made his first request to Salinas for all evidentiary records she reviewed in making the decertification recommendation and a copy of all evidence surrounding the proposed action that would be forwarded to TECOM. (Compl., ¶ 22.A.) Glenn argued that aside from the Kizzee investigation report, the USMC had failed to respond, and that this constituted a formal denial. Glenn conceded, however, there had been no final decision and that he had not appealed this request. Thus, Glenn has not exhausted his administrative remedies for this first Privacy Act request.

On July 12, 2003, Glenn made a second Privacy Act request to Defendant Dyer for the release of a training video made by Glenn and impounded by the USMC during July 2003. (*See* Compl., ¶ 22.E.) Dyer refused to release the training video, which was later destroyed at the behest of the Inspector's Office. (Compl., ¶ 22.E.) "Although the Privacy Act has a provision to allow individuals access to agency records, there is no provision in the Act that allows individuals a remedy for the destruction of agency records, even if the destruction of records

10

was done improvidently." *Laughlin v. Comm'r of Internal Revenue Serv.*, 103 F. Supp. 2d 1219, 1225 (S.D. Cal. 1999). Moreover, Glenn conceded at oral argument that he did not appeal Dyer's refusal to release the training video. Thus, even if Glenn could state a Privacy Act claim for the destruction of the training video, he has not exhausted his administrative remedies as to this claim.

On August 13, 2003, Glenn made his third Privacy Act request to Jones, which asked for: (1) a copy of the recommended decision from Salinas, (2) all records provided to TECOM regarding Glenn, excluding Glenn's 196-page rebuttal, (3) all decertification decisions made during 2002 to 2003 by TECOM and other records pertaining to the decision making process. (Compl., ¶ 22.F.) Captain Andrews responded to this request on June 23, 2004 by denying it in large part and providing a redacted copy of the memorandum from Salinas to Jones giving the basis for her recommended decertification. (*Id*., ¶ 22.I; Opp. at 14.; Defs. Ex. 5.)

On August 9, 2004, Glenn appealed this response. (Compl., ¶ 22.L; Defendants' Motion to Dismiss ("MTD") at 6.) On February 22, 2005, Captain Whitaker responded to this appeal, directed TECOM to respond regarding the decertification decision, and notified Glenn that the right to appeal still existed if any of the TECOM Districts refused to fully comply. (Compl., ¶ 22.Q; Defs. Ex. 8.) On March 1, 2005, pursuant to Captain Whitaker's instructions, Captain Korzilius responded to Glenn's request for a copy of decisions by the Commanding General of the TECOM to either decertify or reject a recommended decertification of a MCJROTC instructor. (Opp. at 15; MTD at 7; *see* Defs. Ex. 9.) Captain Korzilius's response consisted only of the decision to decertify Glenn. (*See* Defs. Ex. 9.) Nevertheless, Defendants argue, and the Court agrees, that Glenn failed to appeal either Captain Whitaker's February 22, 2005 response or Captain Korzilius's March 1, 2005 response. Glenn has thus failed to exhaust his administrative remedies for this Privacy Act request as well.

Therefore, to the extent that Glenn asks this Court to order Defendants to modify his records, Defendants' motion is granted, and this aspect of Glenn's claim is dismissed without prejudice because Glenn has failed to exhaust his administrative remedies.

11

### 2. Glenn's Privacy Act Claim for Damages.

Glenn prays that this Court "[e]nter a money judgment against the USMC in accordance with the civil remedies authorized by the Privacy Act." (Compl., at 14.) Therefore, to the extent that Glenn seeks damages, he need not exhaust his administrative remedies. *See Hewitt*, 794 F.2d at 1379. Defendants argue, however, that Glenn's Privacy Act claim is nonjusticiable because it would involve judicial review of a military decision.

The Privacy Act provides a civil private right of action against a defendant that is a federal agency. 5 U.S.C. § 552a(g)(1). The Privacy Act looks to the Freedom of Information Act ("FOIA") to define an "agency." 5 U.S.C. 552a(a)(1). The FOIA defines an "agency" to include any military department. 5 U.S.C. § 552(f). The Ninth Circuit, moreover, has implicitly allowed review of Privacy Act claims against a military department. *See, e.g., Baker v. Dep't of the Navy*, 814 F.2d 1381 (9th Cir. 1987) (affirming grant of summary judgment against a civilian plaintiff because the records the plaintiff sought to purge were not accessible by a "system of records" within the meaning of the Privacy Act). *Houlihan v. Office of Personnel Management*, which Defendants cite for their proposition of nonreviewability, is inapposite because it did not involve review of a military decision. 909 F.2d 383, 385 (9th Cir. 1990). In addition, similar to Glenn's procedural APA challenge, allowing Glenn to proceed on his Privacy Act claim for damages would not require the Court to review the substance of the decertification decision. Therefore, to the extent that Glenn's Privacy Act claim seeks damages, Defendants' motion to dismiss is denied.

### E. Glenn's Due Process Claim.

Generally, in order to maintain a due process claim, Glenn must demonstrate he has a "liberty or property interest in the benefit for which protection is sought," *i.e.* a liberty or property interest in his certification as a JROTC instructor. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 975 (9th Cir. 2004). The *Feres* intramilitary immunity doctrine, however, precludes judicial review of constitutional claims arising from military personnel decisions. *Bowen*, 152 F.3d at 805. The *Feres* doctrine applies "whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control

of members of the armed forces of the United States." *Id*. at 804 (quoting *Hodge*, 107 F.3d at 710). Even suits by civilian plaintiffs are barred when courts fear that the action might call into question military command or personnel decisions. *Persons*, 925 F.2d at 295 (citing *McGowan v. Scoggins*, 890 F.2d 128, 138 (9th Cir. 1989); *Norris v. Lehman*, 845 F.2d 283 (11th Cir. 1988)).

For example, in the analogous *Norris* case, which the Ninth Circuit has favorably cited, a retired Navy officer certified to teach as a Naval JROTC instructor in public high schools alleged that his decertification violated his rights under the Due Process Clause of the Fifth Amendment. *Norris*, 845 F.2d at 285. As here, the officer responsible for conducting the JROTC program determined that it was "not in the best interests of the program" to retain the instructor's certification. *Id*. In granting the defendants' motion to dismiss the decertified instructor's claim, the Eleventh Circuit concluded that the comprehensive regulatory scheme governing the instructor's employment and the military relationship between the civilian instructor and his reviewing Navy officer represented precisely why it would be inappropriate for a "civilian court to second-guess military decisions." *Id*. at 286 (quoting *United States v. Shearer*, 473 U.S. 52, 57 (1985)).

Here, Glenn's claim is likewise barred. Glenn's employment as a MCJROTC instructor falls under a comprehensive regulatory scheme, including 10 U.S.C. § 2031 and MCJROTC SOP, § 3002. (*See* Compl., ¶¶ 9.B-9.C; Defs. Exs. 3, 4.) In addition, Glenn's employment relationship, despite Glenn's status as a civilian like the instructor in *Norris*, is "essentially a military one." *Norris*, 845 F.2d at 286; (*see* Compl., ¶¶ 16, 18). Because Glenn's due process claim would require this Court to examine a military personnel or disciplinary decision, the intramilitary immunity doctrine precludes judicial review. *See Bowen*, 152 F.3d at 805. Thus, Defendants' motion to dismiss this claim is granted, and this claim is dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. The parties shall appear for a case management conference on April 14, 2006 at 1:30 p.m. A supplemental case management statement shall be due on April 7, 2006.

**IT IS SO ORDERED.**

Dated: February 28, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE